## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ROBERT L. SWINTON, JR.,
    *Plaintiff*,

    v.

                   No. 3:22-cv-900 (JAM)

UNITED STATES INTERNAL REVENUE
SERVICE,
    *Defendant*.

### ORDER DENYING MOTION TO DISMISS

Plaintiff Robert L. Swinton was a federal prisoner at Danbury Federal Correctional
Institution. He has filed a *pro se* complaint *in forma pauperis* against the Internal Revenue
Service ("IRS") alleging that he did not receive his economic stimulus payments that were
authorized by three rounds of COVID-19 pandemic legislation.

The IRS has moved to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) of the
Federal Rules of Civil Procedure for lack of subject matter jurisdiction and for failure to state a
claim upon which relief can be granted. I will deny the motion to dismiss.

### BACKGROUND

Congress created a series of tax credits for eligible individuals in order to alleviate the
economic impact of the COVID-19 pandemic. These credits—payable by the IRS to taxpayers in
the form of Economic Impact Payments ("EIPs")—were enacted under the terms of three
different federal statutes: the Coronavirus Aid, Relief, and Economic Security Act ("CARES
Act") Act, 26 U.S.C. § 6428(a), the Consolidated Appropriations Act of 2021 ("CAA"), 26
U.S.C. § 6428A(a), and the American Rescue Plan Act ("ARPA"), 26 U.S.C. § 6428B(b).

The CARES Act created a $1,200 tax credit, which was authorized for distribution as an
"advanced refund" of tax liability to eligible individuals. *See* 26 U.S.C. §§ 6428(a)–(d), (f)–(g).
The Act directed the Secretary of the Treasury to issue the credit "as rapidly as possible" and

1

specified that no impact payment "shall be made or allowed under this subsection after December 31, 2020." *Id.* § 6428(f)(3)(A). The CAA and ARPA later authorized additional "advance refund" payments of $600 and $1,400 with substantially similar directives and payment deadlines of January 15, 2021 and December 31, 2021, respectively. *See id.* §§ 6428A(a)–(d), (f)(3)(A); 6428B(a)–(d), (g)(3); *see also Griffin v. United States*, 2022 WL 1101817, at *2 (Fed. Cl. 2022) (describing the operation of these three statutes).

Although the IRS initially issued EIPs to prisoners under the CARES Act, the agency abruptly reversed course in 2020.[1] The IRS denied the eligibility of prisoners for EIPs despite the absence of any language in the CARES Act singling out prisoners as not eligible for EIPs. In response, several prisoners brought a class action in the Northern District of California with a certified "class of incarcerated individuals who were incarcerated at any point from March 27, 2020 to [September 24, 2020] and who meet the requirements of the CARES Act for an advance refund." *Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1042 (N.D. Cal. 2020) (*Scholl I*). The court in that case found that the CARES Act "does not authorize [the IRS] to withhold advance refunds or credits from class members solely because they are or were incarcerated." *Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 692 (N.D. Cal. 2020) (*Scholl II*). The court also permanently enjoined the IRS from "withholding benefits pursuant to [the CARES Act] from plaintiffs or any class member on the sole basis of their incarcerated status." *Id.* at 693.

In November 2020, Swinton filed a tax return from the Seneca County Jail to request his EIPs.[2] Swinton did not receive any response from the IRS.[3] In March 2021, Swinton updated his

---

[1] Doc. #12 at 7 (noting IRS reversal of position); *see Breton v. Mnuchin of the Internal Revenue Serv.*, 2021 WL 5086400, at *3 (D. Conn. 2021).
[2] Doc #1 at 4 (¶ 2); *see also* Doc. #1-2 at 3.
[3] Doc. #1 at 4 (¶ 2).

address with the agency.[4] After being transferred to another jail and learning that the Seneca

County Jail had returned his stimulus check, Swinton again updated his address in April 2021 by

sending the IRS a notarized letter.[5] A month later, Swinton sent another notarized letter to the

IRS, requesting all three payments.[6] He received no response.[7]

In December 2021, Swinton submitted a "self-made Administrative [C]laim for

[R]efund" to the Secretary of the Treasury, requesting his three EIPs, but he received no

response.[8] Swinton filed a tax return in 2022 with a letter pointing out that he had not yet

received his EIPs.[9] This time the IRS responded, explaining that Swinton needed to submit a

claim form to receive his payments.[10] Swinton sent the IRS a request for the necessary forms, but

never received a response.[11]

Swinton wrote one final notarized letter to the IRS in May 2022 with instructions on how

he could receive his payments, noting that he would file a lawsuit if he did not receive his

checks.[12] He received no response, and this action followed in July 2022.[13] Swinton's complaint

alleges that he is owed $3,200 for the three EIPs that he should have received.[14] On November

18, 2022, the IRS filed a motion to dismiss.[15]

---

[4] *Id.* at 4 (¶ 3).
[5] *Ibid.*; Doc #1-2 at 1, 3.
[6] Doc. #1 at 4 (¶ 4); Doc. #1-2 at 2.
[7] Doc. #1 at 4 (¶ 4).
[8] *Id.* at 4 (¶ 5); Doc. #1-2 at 3–4.
[9] Doc. #1 at 4–5 (¶ 6).
[10] *Ibid.*
[11] *Ibid.*
[12] *Id.* at 5 (¶ 7); Doc. #1-2 at 5.
[13] Doc. #1 at 5 (¶ 7).
[14] *Id.* at 6.
[15] Doc. #12.

## DISCUSSION

The standard that governs a motion to dismiss under Rules 12(b)(1) and 12(b)(6) is well established. Under Rule 12(b)(1), a complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain subject matter jurisdiction. *See Brownback v. King*, 141 S. Ct. 740, 749 (2021).[16] Similarly, under Rule 12(b)(6) a court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (discussing applicable principles for review of a complaint's adequacy).

In reviewing a *pro se* complaint, the Court must assume the truth of the allegations and interpret them liberally to raise the strongest arguments they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).

The IRS advances three arguments to support dismissal of Swinton's complaint.[17] First, the IRS argues that it has sovereign immunity and there is no private right of action for Swinton to seek EIPs.[18] Second, the IRS argues that the *Scholl* class action prevents Swinton from seeking the individual judicial relief that he now seeks in this action.[19] Third, the IRS argues that

---

[16] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions. Nor do case citations include subsequent history not relevant for present purposes.
[17] Doc. #12 at 12 (summarizing arguments); Doc. #16 at 1 (same).
[18] Doc. #12 at 10–11.
[19] *Id.* at 7–10.

the Court cannot grant relief because by law the deadlines for the IRS to make further EIPs have passed.[20] I will address each of these arguments in turn.

### Sovereign immunity and private right of action

The IRS claims that it has sovereign immunity from this lawsuit. It is true that the United States and its agencies are ordinarily entitled to the protection of sovereign immunity from a lawsuit unless the federal government has waived its immunity. *See United States v. Dalm*, 494 U.S. 596, 608 (1990). Here, Congress by law has conferred subject matter jurisdiction on federal district courts to consider claims for tax refunds that have been wrongfully assessed or collected. *See* 28 U.S.C. § 1346(a)(1). Thus, as the Supreme Court has made clear, "[a] taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims." *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008).[21] A taxpayer seeking a refund, however, must first seek relief from the IRS before seeking relief in a federal court. *See* 26 U.S.C. § 7422(a); *Clintwood Elkhorn*, 553 U.S. at 4.[22]

The IRS's initial briefing for this motion to dismiss did not cite or acknowledge § 1346(a)(1) and § 7422. Only when Swinton's response brought these statutes to the Court's attention did the IRS respond by arguing that § 1346(a)(1) is not applicable because it is "a waiver of sovereign immunity as to claims regarding tax collection – not to payments such as

---

[20] *Id.* at 11.

[21] Section 1346(a)(1) states that "[t]he district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of: (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."

[22] Section 7422(a) states that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

EIPs."[23] Similarly, the IRS argues that "the plain language" of § 7422 "does not apply to EIPs," because "it concerns taxes that have been already paid by a plaintiff, which is not the situation here."[24]

But these arguments overlook the wording of all three EIP statutes that recognize EIPs as no less than an "advance refund" of taxes based upon the individual "be[ing] treated as *having made a payment* against the tax imposed by chapter 1 for such taxable year *in an amount equal to the advance refund amount* for such taxable year." 26 U.S.C. §§ 6428(f)(1) (CARES Act); 6428A(f)(1) (CAA); 6428B(g)(1) (ARPA). As the Court of Claims has recognized, while EIPs "are different from a typical tax refund, . . . in creating those credits, Congress used the preexisting rules for tax refunds." *Griffin*, 2022 WL 1101817, at *6; *see also Sarmiento v. United States*, 678 F.3d 147, 156 (2d Cir. 2012) (discussing Congress's prior use of similar "advance refund" criteria based on the statutorily-created "legal fiction" that the taxpayer had overpaid their prior year tax liability).

The IRS does not reckon with the key language of these statutes—language which triggers the right of a taxpayer under § 1346(a)(1) and § 7422 to pursue a court action for a tax refund because, according to the EIP statutes themselves, the taxpayer must be treated as having made a payment for which the taxpayer is entitled to a refund. Although § 7422 imposes an administrative exhaustion requirement, the "[c]onsensus among courts having addressed complaints of missing or erroneously administered COVID stimulus checks is to apply § 7422 tax refund procedures to such claims." *Perez v. Internal Revenue Serv.*, 2023 WL 4405211, at *1 n.2 (collecting cases), *report and recommendation adopted*, 2023 WL 4249209 (D. Nev. 2023); *see also Taylor v. IRS*, 2023 WL 2247043, at *2–3 (E.D. Cal. 2023) (finding that Congress

---

[23] Doc. #16 at 3.
[24] *Id.* at 2.

waived sovereign immunity pursuant to § 1346(a)(1) for prisoner tax refund action seeking EIP under the CARES Act but that the prisoner's claim should be dismissed for failure to exhaust administrative remedies as required under § 7422). In other words, courts agree that if the EIP is applied for like a tax refund, processed like a tax refund, and received like a tax refund, then it should be understood as a tax refund, which provides this Court with subject matter jurisdiction under § 1346(a)(1) and Swinton with a cause of action as allowed and subject to the limits imposed under § 7422.[25]

Indeed, the IRS recognized as much when it litigated the *Scholl* class action. There, when the IRS wanted to avoid a class action by prisoners seeking relief under the Administrative Procedures Act ("APA") for the IRS's failure to pay them their EIPs, the IRS insisted that the APA was not applicable because the prisoners had an alternative remedy by way of filing for a tax refund under § 7422. The IRS in *Scholl* assured the district court that in lieu of an APA action "a refund action under title 26 U.S.C. § 7422 is an adequate remedy" and in recognition that "the core" of the prisoners' claim was that they "claim a monetary tax benefit that Congress made possible by *treating eligible individuals as though they had made a payment* against the tax imposed by the Internal Revenue Code on their 2019 taxes and then allowing an advanced refund on that overpayment." *Scholl II*, 494 F. Supp. 3d at 680 (emphasis added).

I am persuaded by the IRS's argument—that is, the argument that the IRS cogently made in *Scholl* about why § 7422 is applicable to a prisoner's claim for an EIP tax refund, not the

---

[25] Here, Swinton argues that he administratively exhausted his claim before the IRS as required by § 7422. Doc. #1 at 4 (¶¶ 2, 4–6); Doc. #1-2 at 3–4; Doc. #13 at 2–3; Doc. #14 at 3–4. But apart from altogether denying that either § 1346(a)(1) or § 7422 even apply to Swinton's claim, the IRS's briefing does not dispute that Swinton exhausted the procedures required under § 7422. So there are no grounds for me at this time to rule that Swinton failed to exhaust administrative remedies with the IRS as required under § 7422.

argument that the IRS now makes to categorically deny the applicability of § 1346(a)(1) and § 7422 to a taxpayer claim for an EIP refund.

Nor did the court in *Scholl* embrace the proposition that a prisoner who has been denied an EIP has no right to seek judicial review in accordance with § 1346(a)(1) and § 7422. It concluded instead that the plaintiffs "are challenging an agency action, not seeking a tax refund." *Id.* at 681. The plaintiffs sought class-wide relief to prevent prisoners from being automatically disqualified by their prisoner status from being eligible for an EIP under the CARES Act: "the gravamen of the complaint is that the IRS's decision to exclude incarcerated individuals is unlawful because the IRS's decision was both contrary to law and arbitrary and capricious." *Ibid.* So it was "[f]or that reason, an adequate remedy is not available by filing a tax refund suit." *Ibid.*

The IRS further argues that "[t]he Court should dismiss this complaint for lack of jurisdiction because there is no private cause of action for the disbursement of EIP funds."[26] But this argument ignores that § 1346(a)(1) and § 7422 provide a right of private action for all the reasons outlined above.

To be sure, the IRS cites two district court cases that have dismissed prisoner EIP claims on the ground that the prisoners lacked a private right of action. *See Byers v. Rettig*, 2022 WL 3205184, at *4 (W.D.N.C. Aug. 8, 2022) (prisoner is "not entitled to assert a private cause of action for disbursement of these [EIP] funds"); *Phelps v. Mnuchin*, 2021 WL 2138506, at *4 (N.D. Ind. 2021) ("there is no suggestion there is a private cause of action under the CARES Act

---

[26] Doc. #12 at 12. The IRS's argument conflates an issue of lack of subject matter jurisdiction (sovereign immunity) with a mere failure to state a claim (lack of a private right of action). But "[t]he question whether a federal statute creates a claim for relief is not jurisdictional." *Nw. Airlines, Inc. v. Cnty. of Kent, Mich.*, 510 U.S. 355, 365 (1994). The Second Circuit has explained why "a question of whether the particular plaintiff 'has a cause of action under the statute'" is a merits question and "'does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)).

for receipt of specific non-disbursed funds, and it is not this Court's function to raise up a cause of action where a statute has not created one"). And in truth there are many similar "no private right of action" rulings by other district courts confronted with prisoner actions for EIP refunds. *See, e.g.*, *Thompson v. U.S. Dep't of Treasury Internal Revenue Serv.*, 2023 WL 4744751, at *2 (D.N.J. 2023); *Parson v. Yellen*, 2023 WL 3579768, at *1 (N.D.N.Y. 2023); *Baxter v. United States*, 2023 WL 2418369, at *3, *report and recommendation adopted*, 2023 WL 2411027 (S.D.W. Va. 2023).

But these "no private right of action" decisions do not explain why a prisoner's EIP claim is not amenable to a right of action for a tax refund as allowed under § 1346(a)(1) and § 7422. These claims clearly are within the scope of § 1346(a)(1) and § 7422 as I have explained above (and as the IRS itself explained in *Scholl*). The fact that the EIP statutes themselves do not have special provisions authorizing prisoners to file lawsuits does not mean that there is no private right of action available to prisoners—like any other taxpayers—under § 1346(a)(1) and § 7422.

In short, the United States has waived its sovereign immunity for a tax refund action like the one pursued by Swinton here. Because it is clear that Swinton's action is allowed under § 1346(a)(1) and § 7422, there is no merit to the IRS's argument that Swinton's claim must fail for lack of a private right of action. Accordingly, I will deny the IRS's motion to dismiss to the extent that it argues that the United States has sovereign immunity from Swinton's claim and that Swinton lacks a private right of action.

### *Preclusive effect of the* Scholl *class action*

The IRS next argues that "Swinton is a member of the *Scholl* class and he is not entitled to separate relief because he has already received relief under *Scholl II*."[27] But as an initial

---

[27] Doc. #16 at 4.

matter, it is clear that the IRS's argument is overbroad because the *Scholl* class action concerned solely the right to a $1,200 EIP under the CARES Act. It did not mention or extend to the separate right to payments of $600 and $1,400 under the CAA and ARPA, which were enacted *after* the injunction issued in *Scholl* on October 14, 2020.[28] Nor is there any language in the injunction purporting to bind the parties in the event of later-enacted EIPs. *See Scholl II*, 494 F. Supp. 3d at 692–93. The IRS offers no reason to suggest that the *Scholl* class action has any effect on Swinton's claims for EIP refunds as authorized under the CAA and ARPA.

In any event, even as to the CARES Act alone, *Scholl* does not extinguish the rights of prisoners to seek a tax refund under § 1346(a)(1) and § 7422. The court in *Scholl* declared that "[a]t its core, *this is not a tax refund action*; rather, plaintiffs' claims are grounded in the APA and challenge the IRS's interpretation of the CARES Act and the procedures by which the IRS arrived at its interpretation." *Id.* at 691. The *Scholl* injunction required the IRS to promptly reconsider its prior denials of EIPs to prisoners. In so ruling that the IRS must administratively reconsider EIPs for prisoners, the *Scholl* court did not purport to rule out the right of prisoners to seek judicial relief if the IRS wrongfully refused their refund claims.

To the contrary, the *Scholl* court made clear that "this remedy [under the APA for reconsideration by the IRS of prisoner claims] may require the IRS to issue EIPs, assuming an individual meets the remaining criteria delineated in the CARES Act." *Id.* at 681. And the court stated that it "takes no position on whether plaintiffs or class members are in fact owed advance refund payments or the amount of those payments." *Id.* at 691.

---

[28] According to the legislative history reference in the United States Code Annotated, the CAA—codified at 26 U.S.C. § 6428A—was enacted on December 27, 2020, and the ARPA—codified at 26 U.S.C. § 6428B—was enacted on May 11, 2021.

The *Scholl* injunction ensured that the IRS could not arbitrarily preclude all prisoners from receiving an EIP under the CARES Act. It ensured a full and fair review of prisoner EIP eligibility by the IRS. It says nothing to suggest that if prisoners are wrongfully denied an EIP refund, then they may not seek judicial relief just as any taxpayer may do to seek a tax refund under § 1346(a)(1) and § 7422.

To be sure, it appears that many courts—even the very judge who presided over *Scholl*— have ruled that the *Scholl* class action somehow precludes prisoners from seeking judicial relief for a wrongful denial of an EIP tax refund. *See Coy v. Trump*, 2021 WL 965321, at *3 (N.D. Cal. 2021); *see also Everett v. Dir. of I.R.S.*, 2023 WL 5279638, at *3 (N.D. Cal. 2023); *Vaughan v. U.S. Dep't of Treasury*, 2021 WL 3373280, at *3 (N.D. Cal. 2021); *Stevens v. Internal Revenue Serv.*, 2021 WL 827578, at *3 (N.D. Cal. 2021). Other courts beyond the Northern District of California have reached the same conclusion. *See, e.g.*, *Alverson v. Munchin*, 2021 WL 11421353, at *5, *report and recommendation adopted*, 2021 WL 4188396 (M.D. Ala. 2021); *Meyer v. Mnuchin*, 2021 WL 3473241, at *3–4 (D.S.D. 2021); *Wheat v. Mnuchin*, 2021 WL 1751299, at *4 (E.D. Mo. 2021).

But the reasoning of these decisions does not withstand scrutiny. The court in *Coy* reasoned that "[t]o the extent plaintiff argues that his EIP was denied due to his incarcerated status, he is already a member of the *Scholl* class; therefore, he is not entitled to separate individual relief," and that "[a]n individual suit for injunctive and equitable relief may be dismissed when it duplicates an existing class action's allegations and prayer for relief." 2021 WL 965321, at *3. A central holding of *Scholl*, however, was that the class plaintiffs were *not* seeking individual tax refunds under § 7422; they were seeking to halt an arbitrary policy of the IRS to deny EIPs to all otherwise eligible prisoners. *See* 494 F. Supp. 3d at 691. And the relief

ordered in *Scholl* was to require the IRS to promptly consider prisoner EIP eligibility and claims anew. *See id.* at 693.

So it makes no sense to say that a *Scholl* class member's subsequent claim for individual judicial relief from a wrongful denial by the IRS "duplicates" what was given to or requested by the class in *Scholl*. Nor can the "duplication" argument be squared with the Ninth Circuit's "general rule" that "a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damage claims by class members, even if based on the same events." *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996).

Indeed, the court in *Coy* goes on to contradict its conclusion that the plaintiff was seeking "duplicative" relief. It took pains to explain how the class-wide relief requested in *Scholl* was *different* from a request for an individual refund:

> The court in *Scholl* found that the EIP could not be denied only because an individual was incarcerated. However, the court was clear that it took no position on whether individual incarcerated plaintiffs were owed the EIP, which is the relief sought in the instant case. That responsibility fell to the IRS to make an individual determination.

*Coy*, 2021 WL 965321, at *3. The upshot is that *Scholl* "took no position" on individual claims for relief, and the fact that "responsibility fell to the IRS to make an individual determination" did not mean that prisoners were barred from seeking judicial review if the IRS wrongfully denied their claim for an EIP refund.

One would have thought that if *Scholl* cut off the rights of prisoners to seek individual judicial relief from a future wrongful denial by the IRS of a prisoner's EIP refund, then *Scholl* would have said so. It does not.

In short, there is no merit to the IRS's argument that Swinton's membership in the *Scholl* class disqualifies him from seeking judicial relief as allowed for all taxpayers who seek tax refunds under § 1346(a)(1) and § 7422. Accordingly, I will decline to dismiss the complaint on those grounds.

### *Statutory deadlines for EIPs*

The last of the IRS's arguments for dismissal is that no judicial relief can be granted because all three statutes—the CARES Act, CAA, and ARPA—set deadlines in 2020 and 2021 for the IRS to make any EIPs, and all those deadlines have long since passed. The IRS is right that the CARES Act, CAA, and ARPA all imposed deadlines by which advance refund payments were to be made, the latest of which was December 31, 2021. *See* 26 U.S.C. §§ 6428(f)(3)(A), 6428A(f)(3)(A)(i)(I), 6428B(g)(3). And it is also true that numerous courts have dismissed similar prisoner EIP actions by reading these deadlines as absolute. *See, e.g.*, *Everett*, 2023 WL 5279638, at *3; *Byers*, 2022 WL 3205184, at *4; *Hudson v. Dep't of Treasury*, 2021 WL 5782471, at *3 (W.D. Mich. 2021); *Breton*, 2021 WL 5086400, at *3; *Coy*, 2021 WL 965321, at *3.

But only by ignoring the plain text of the relevant legislation can one construe the statutory deadlines as foreclosing relief for a prisoner like Swinton who has filed a tax return and seeks a refund. The operative statutes direct that "[n]o refund or credit shall be made or allowed *under this subsection* after" the corresponding deadline. 26 U.S.C. §§ 6428(f)(3)(A), 6428A(f)(3)(A)(i)(I), 6428B(g)(3) (emphasis added). The subsection in question, "Advance refunds and credits," directs that the distribution of payments may occur in advance of the credit created by the preceding subsections, but no *advance* refunds and credits may be made past the statutory deadline. *Ibid.* A taxpayer, however, may still submit a tax return and claim the credit,

subject to the terms established in the preceding subsections. The *Griffin* court endorsed this understanding that "[t]he first economic stimulus payment cannot be distributed after December 31, 2020, *unless the taxpayer files a tax return for the year 2020*." 2022 WL 1101817, at *6 (emphasis added).

And the IRS agreed about all this when it was opposing the *Scholl* class action. It argued that "the CARES Act created a refundable credit against an eligible individuals' 2020 tax return," and that "a taxpayer could only sustain an injury when he or she attempts to claim the CARES Act tax credit on his or her 2020 tax returns and then only if the IRS denies the claim to the tax credit." *Scholl I*, 489 F. Supp. 3d at 1025. Therefore, the IRS well knows that it can pay CARES Act EIP refunds to taxpayers *after* the advance refund deadline of December 31, 2020 and after taxpayers filed their 2020 tax returns. There is no basis to suggest that the reasoning would be any different for the CAA and ARPA deadlines.

This interpretation aligns with the legislative goal of rapidly issuing funds in response to the economic impact of the COVID-19 pandemic. Taxpayers who did not receive a check, however, were still afforded the possibility of receiving that relief by filing their tax returns and claiming a refund equal to the EIPs that similarly situated individuals received. A reading to the contrary would disenfranchise those taxpayers who exercised their legal right to file a tax return within the three-year window for a given calendar year. *See* 26 U.S.C. § 6511.

Despite what the IRS tells federal courts about how the deadline is mandatory, the IRS to this day publicly acknowledges that taxpayers can still claim their EIP refunds. Its website presently notes that those "missing a stimulus payment or got less than the full amount may be eligible *to claim a Recovery Rebate Credit* on their 2020 or 2021 federal tax return."[29] *See also*

---

[29] Internal Revenue Services, *Recovery Rebate Credit* (emphasis added), https://www.irs.gov/newsroom/recovery-rebate-credit [https://perma.cc/26FY-7TD2] (last accessed Sept. 29, 2023).

*Garner v. Internal Revenue Serv.*, 2022 WL 3998150, at \*2–3 (D. Utah 2022) (quoting from same IRS website and making clear that a plaintiff who filed tax returns in 2020 and 2021 may proceed if he alleges compliance with exhaustion procedures of § 7422).

Further, the IRS has in fact issued EIP refunds well past the statutory deadlines. In response to a claim from a similarly situated plaintiff, the IRS noted that they processed the plaintiff's "2021 return and issued a refund of $1,464.7, representing EIP 3, plus interest." Mot. to Dismiss at 2, *Wilkins v. U.S. Dep't of Treasury (I.R.S.)*, No. 21-cv-428 (W.D. Va. 2023), ECF No. 37-1. Indeed, the IRS has issued tax refunds predicated on an EIP as late as June 2021. *See Williams v. United States*, 165 Fed. Cl. 72, 75 (2023).

On top of all this, the Third Circuit has recently rejected the IRS's deadline argument for the basic reasons I have outlined. It noted that "[t]he IRS also argues that 'no more EIPs may now be issued' because the CARES Act 'imposed a deadline of December 31, 2020 for the IRS to issue advance payments of refunds'" but pointed out that this argument was contradicted because "the IRS acknowledges that after December 31, 2020, the amount of the EIP is still 'allowable as a recovery rebate credit against a taxpayer's 2020 income tax.'" *Graham v. Dep't of the Treasury Internal Revenue Serv.*, 2023 WL 3597382, at \*2 n.7 (3d Cir. 2023).

Here, Swinton has alleged that he filed tax returns in 2020 and 2022 seeking EIP refunds. There is no statutory deadline that prevents the IRS from granting the refunds that Swinton requests.

In short, I cannot agree with the IRS that statutory deadlines prevent the IRS from granting relief to Swinton in this case. Accordingly, I will deny the motion to dismiss this action on the ground that the IRS lacks authority to grant relief.

*Swinton's motion to substitute United States for Internal Revenue Service*

Swinton has moved for leave to substitute the United States of America as the party defendant in light of the language of § 1346(a)(1) that waives the sovereign immunity of the "United States" for a tax refund action.[30] The government does not respond in substance to the motion except to claim that "[w]hether this case is against the IRS or the United States, it is subject to dismissal."[31] In the absence of any reason why the United States should not be substituted as a party in conformity with § 1346(a)(1), I will grant the motion for substitution.

Lastly, Swinton's motion also seeks notice of his administrative claim presented to the Internal Revenue Service.[32] I take note of the administrative claim—including Swinton's claim for discrimination and claim for more damages—but advise that if Swinton wishes to modify the claims that he seeks to assert in this Court, then he must promptly file a motion pursuant to Fed. R. Civ. P. 15(a)(2) for leave to file an amended complaint, and the motion should explain why he wishes to amend his complaint and should be accompanied by a proposed amended complaint.

## CONCLUSION

For the reasons set forth above, the Court DENIES the defendant's motion to dismiss (Doc. #12). The Court GRANTS the plaintiff's motion to substitute the United States of America as party defendant (Doc. #13), and the Clerk of Court is requested to amend the case caption accordingly.

It is so ordered.

Dated at New Haven this 30th day of September 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[30] Doc. #13 at 2.
[31] Doc. #16 at 5.
[32] Doc. #13 at 2, 4 (claim form).